HOUSTON FARMS DEVELOPMENT COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 21354. Promulgated September 28, 1950.

*James H. Yeatman, Esq.,* and *Marvin K. Collie, Esq.,* for the petitioner.

*J. Marvin Kelley, Esq.,* and *L. R. Van Burgh, Esq.,* for the respondent.

[6] *Steubenville Bridge Co. et al.,* 11 T. C. 789; *Armored Tank Corp.* (N. Y.), 11 T. C. 644; *Dallas Downtown Development Co.,* 12 T. C. 114.

**324**

OPINION.

Leech, *Judge:* The sole issue is whether petitioner is required to restore to income in the taxable year 1944 any part of a depletion deduction of $27,500 claimed and allowed in 1939 on a bonus of $100,000 received in that year under an oil and gas lease. The respondent contends that the lease having been terminated in 1944 without production, restoration is required under Treasury Regulations 111, sec. 29.23 (m)–10.[1] The validity of such regulation was sustained in *Douglas et al.* v. *Commissioner*, 322 U. S. 275.

---

[1] Regulations 111.

SEC. 29.23 (m)–10. DEPLETION.—ADJUSTMENTS OF ACCOUNTS BASED ON BONUS OR ADVANCED ROYALTY. * * *

(c) If for any reason any grant of mineral rights expires or terminates or is abandoned before the mineral which has been paid for in advance has been extracted and removed, the grantor shall adjust his capital account by restoring thereto the depletion deductions made in prior years on account of royalties on mineral paid for but not removed, and a corresponding amount must be returned as income for the year in which such expiration, termination, or abandonment occurs.

The original lease from petitioner to Mrs. Esperson dated July 21, 1939, covered 1,160 acres consisting of twenty-nine 40-acre tracts. Its primary term was 5 years and it was to continue as long as gas or oil was produced. Lessee had the option of drilling or paying a fixed annual rental. Lessee paid an initial bonus of $100,000 and the annual rentals for the 5-year period. After March 30, 1943, the Petroleum Administrator for War would only grant priority to secure pipe for drilling for gas or oil on a unit of 320 acres. Mrs. Esperson's acreage was so situated she could not secure a priority to drill. (See Petroleum Production Operations Order 11 and Supp. Order No. 1, March 30, 1943; 8 Fed. Reg. 395-8-9).

Included in the acreage covered by the original lease of July 21, 1939, were five 40-acre tracts which were considered proven ground. Petitioner's president undertook to work out an arrangement whereby these 200 acres could be included in pooling agreements of 320 acres so that a priority could be secured to enable drilling operations. He succeeded in getting commitments to the formation of three pool agreements. Mrs. Esperson's 200 acres became a part of one or the other of the three pools. Also contributing acreage were petitioner, Phillips Petroleum Co. and Gulf Oil Corporation. Producing wells were drilled on 2 of such pooled units. To carry out the pooling arrangements Mrs. Esperson was to release all her right, title and interest under the original 1939 lease; three new leases were to be executed and delivered to her covering 200 acres included in the original lease; these leases were to be assigned to Phillips, and three pooling agreements were to be executed and delivered. All the documents were to be and in fact were delivered concurrently.

Petitioner contends that each of the documents was an integral step in a single transaction, and so construed the three leases to Mrs. Esperson covering the 200 acres as but a continuation of the original lease in a modified form; hence there was no termination of the original lease as required by the aforementioned regulation.

The respondent contends that the release executed by Mrs. Esperson unconditionally relinquished and surrendered all her right, title and interest in the land covered by the original lease, and since the original lease was terminated without production the restoration to income of the previously allowed depletion of the sum of $27,500 is justified. In the alternative, the respondent contends that since 24 of the twenty-nine 40-acre tracts were unconditionally surrendered in the taxable year, $24/29$ of the $27,500, or $22,578.62, should be restored to income.

We think it is clear that Mrs. Esperson did not intend to and did not unconditionally surrender all her valuable rights under the original lease. The execution of the release was contingent upon the execution of the new leases covering the 200 acres included in the

original lease. The purpose of these separate instruments was to preserve her interest in such form as would enable her to enter into the pooling agreements, which was the only way then open to her to have drilling operations on the lands covered by the original lease. She paid no new consideration for the new leases.

We conclude that the surrender of the original lease and the giving of new leases covering a part of the acreage embraced in the old lease in its stead, pursuant to the agreement to do so, constituted integrated steps in one transaction and are in legal effect a mere continuation of the former lease in modified form.

The original 1939 lease was neither terminated nor abandoned in its entirety and the respondent erred in restoring to petitioner's income the total amount of depletion deductions of $27,500 previously allowed on the payment of the $100,000 bonus.

As to the respondent's alternative contention that there should be a pro rata return to income of such portion of the allowed depletion as the released acreage bears to the total acreage embraced in the original lease, we find substantial merit. It is undisputed that 24 of the twenty-nine 40-acre tracts were unconditionally released and surrendered to petitioner on April 24, 1944. These twenty-four 40-acre tracts were condemned for oil and gas production and it may be assumed that there was no oil or gas underlying such tracts to be depleted. No well was ever drilled and no production was ever obtained therefrom.

Petitioner argues that the cash bonus payment of $100,000 is not allocable on an acreage basis. It is true the provision of the lease quoted in our findings of fact provides that the lessee may release any portion of the acreage and thereby reduce pro tanto the "rentals," and states "* * * The down cash payment is consideration for this lease according to its terms and shall not be allocated as mere rental for a period. * * *" What this means as between the parties is not clear except that the lessee can not recover from the lessor any part of the bonus payment. In any event, however, its effect can not be extended to control the pending question which is whether as between the respondent and the lessor this cash payment is allocable on an acreage basis for present purposes.

In cases presenting substantially similar facts, we have held that where there has been a termination, expiration or abandonment of a part of the acreage under an oil and gas lease there should be an allocation of the total bonus paid to the acreage abandoned and a restoration to income of that portion of the depletion taken with respect to the abandoned acreage. *Grace M. Barnett*, 39 B. T. A. 864; *Mary F. Waggoner*, 47 B. T. A. 699. On the issue of apportionment in a memorandum opinion of this Court we were reversed by the United States

Court of Appeals for the Fifth Circuit, *Driscoll* v. *Commissioner*, 147 Fed. (2d) 493. We think that the facts in the instant case are indistinguishable from the controlling facts in the *Driscoll* case, *supra*. Nevertheless, with due deference to the opinion of the Circuit Court in that case, we will adhere to our decision in that case.

We, therefore, conclude that $^{24}\!/_{29}$ of the sum of $27,500 of the depletion deduction previously taken and allowed in 1939 is to be restored to petitioner's income for the taxable year 1944.

Reviewed by the Court.

*Decision will be entered under Rule 50.*